**Philip A. KINNAMAN, Appellant,**

v.

**Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.**

No. 90–784.

United States Court of Veterans Appeals.

Decided Jan. 7; 1993.

Lawrence B. Hagel, Washington, DC, was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, Washington, DC, were on the brief, for appellee.

Before KRAMER, FARLEY and IVERS, Associate Judges.

IVERS, Associate Judge:

Philip A. Kinnaman appeals from a May 2, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied him service connection for bilateral keratoconus, a cone-shaped protrusion of the cornea. WEBSTER'S MEDICAL DESK DICTIONARY 363 (1986). The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)). For the reasons set forth below, we reverse the decision of the BVA and remand the case for an award of service connection consistent with this opinion.

## FACTS

The veteran served in the United States Coast Guard from April 1974 to July 1977. R. at 105. His preinduction physical examination was conducted on April 11, 1974, and showed the veteran's uncorrected vision as 20/70 in the right eye and 20/100 in the left. R. at 56. His corrected vision was reported as 20/25 in the right and left eyes. *Id.* His eyes were reported as normal on the clinical evaluation. R. at 57. On April 30, 1974, the veteran underwent a pretraining physical examination during which his uncorrected vision was again recorded as 20/70 in the right eye and 20/100 in the left eye and his corrected vision was recorded as 20/30 in the right and left eyes. R. at 7. There were no clinical findings reported on this examination. R. at 6. On May 23, 1974, Mr. Kinnaman was seen for a routine Coast Guard recruit eye examination which was conducted by J.M. Harmon, O.D., at the Eye Clinic of the United States Public Health Service Hospital in San Francisco. R. at 16, 18, 50, 55. During this examination, the veteran reported that he had received his first pair of spectacles five months before but was now experiencing blurred distance vision. R. at 16, 50. He reported no history of eye injury, disease, or surgery. *Id.* Dr. Harmon's diagnosis was "probable early keratoconus." R. at 18, 55. The veteran was seen again at the clinic on May 30, 1974, for a keratoconic fitting for contact lenses. R. at 19, 62.

In a letter dated June 3, 1974, Dr. Harmon reported his findings regarding Mr. Kinnaman's eye condition to the United States Coast Guard. R. at 15, 60. The doctor wrote that "Mr. Kinnaman has an eye condition tentatively diagnosed as keratoconus, a noninflammatory degenerative disease of the cornea," the cause of which is unknown. *Id.* In addition, Dr. Harmon reported that "[h]istory and ocular signs indicate the condition was present prior to C[oast] G[uard] induction." *Id.* Throughout the summer of 1974, Mr. Kinnaman continued to be treated and examined for his eye condition. R. at 21–26, 51–54, 64–72. In July, he was seen by Dr. Lee Stewart, an ophthalmological consultant. R. at 25, 50, 67–68. A photo keratograph of the left eye confirmed irregularities of the corneal contour indicative of keratoconus. *Id.* In an outpatient report dated August 20, 1974, a final diagnosis of early keratoconus of the left eye was confirmed by Dr. Harmon. R. at 50. In his report, Dr. Harmon stated, "Whether or not the condition existed prior to entry into the Coast Guard cannot be stated with absolute certainty, although it is probable that the process began earlier. The condition has not been aggravated by his service in the Coast Guard." *Id.* The doctor's prognosis was that "[t]he condition may progress," and he

noted, "Therefore it is reasonable to recommend discharge from the Coast Guard." *Id.*

In September 1974, a Coast Guard Medical Board was convened to determine whether Mr. Kinnaman's eye disorder rendered him unfit for duty. R. at 48–49. The report of the Medical Board, written by Dr. David B. Cook, concluded the following:

There is neither history nor record of physical findings indicative of the existence of [k]eratoconus prior to entry into the Coast Guard. I, therefore, feel that it must be assumed that this condition did not exist prior to service.

Although S[eaman] A[pprentice] KINNAMAN is strongly motivated to remain in the Coast Guard, phone conversation with Dr. HARMAN [sic] reveals that attempted therapy with hard contact lenses was unsuccessful in SA KINNAMAN's case. Neither is Dr. HARMAN [sic] enthusiastic about the therapeutic prospects of the use of soft contact lenses and glasses. Other treatment such as the possibility of corneal transplant would not be attempted until much later in the course of the disease.

. . . It is therefore the recommendation of this Medical Board that SA KINNAMAN be discharged on the basis of a physical defect incurred during a period of military service.

R. at 49 (capital letters in original).

On November 11, 1974, the findings of the Medical Board were overruled by the Coast Guard Physical Evaluation Board (PEB) which found Mr. Kinnaman fit for duty and ordered him to return to duty. R. at 46. The findings of the PEB were approved by the Coast Guard Commandant on December 16, 1974, and the veteran's commanding officer was notified that "Seaman KINNAMAN shall not be retired or separated by reason of physical disability." R. at 45, 137 (capital letters in original). Throughout the remainder of his active service, the veteran underwent numerous eye examinations. R. at 29, 31–44, 77, 79–82, 85–87, 90–92, 95. He suffered, inter alia,

from blurred vision and temporal headaches. *Id.*

In a letter to the Coast Guard dated January 14, 1975, Dr. Harmon reported, "Mr. Kinnaman has been determined to have keratoconus of both eyes. The condition is quite apparent in the left eye but only slightly affect [sic] the right eye." R. at 14, 76. In addition, Dr. Harmon noted,

[Mr. Kinnaman] has been followed by me since May 23, 1974, and last examined on January 6, 1975. His visual acuity with glasses and corneal curvatures have remained essentially the same since August of 1974. The condition is now stable or progressing very slowly. This stability may persist indefinitely. However, keratoconus is an unpredictable entity and progression could recurr [sic] at any time. Because of this unpredectability [sic] Mr. Kennaman [sic] should be examined by an ophthalmologist or optometrist every four to six months, or sooner if symptoms occur.

*Id.*

In 1977, another Coast Guard Medical Board met to evaluate Mr. Kinnaman's condition and determine whether he was fit to remain in service. R. at 99. The Board reviewed a March 17, 1977, outpatient narrative summary submitted by Dr. Harmon. *Id.* In his summary, Dr. Harmon repeated his opinion of August 1974 with regard to when Mr. Kinnaman's keratoconus was incurred and whether it was aggravated during service: "Whether or not this condition existed prior to entry into the Coast Guard cannot be stated with certainty, although it is probable that the process began earlier. The condition has not been aggravated by service in the Coast Guard." R. at 100. On April 12, 1977, the Medical Board forwarded the case, without recommendation, to the PEB for disposition. R. at 99.

On June 8, 1977, the PEB found that Mr. Kinnaman suffered from keratoconus of the left eye, that the disease was incurred while in service, that the disease was the proximate result of his performance of active duty, that the disease was incurred in the line of duty during a time of war or national emergency, and that the disease

was not the result of willful neglect or intentional misconduct. R. at 97. Furthermore, the PEB found that the condition may be permanent and that the applicable Veterans' Administration (now Department of Veterans Affairs) (VA) diagnostic code number was 6035. *Id.* The PEB recommended that Mr. Kinnaman be separated from the Coast Guard with severance pay. *Id.*

On July 6, 1977, the Coast Guard Commandant approved the proceedings and findings of the PEB, stating that Mr. Kinnaman had been found "UNFIT TO PERFORM DUTIES OF HIS RATING BY REASON OF PHYSICAL DISABILITY WHICH MAY BE OF PERM[ANENT] NATURE AND CONSIDERED TO BE ZERO PER CENT DISABLING I[N] A[CCORDANCE] W[ITH] CURRENT VA SCHED[ULE] FOR RATING DISABILITIES." R. at 96, 131 (capital letters in original). In addition, the Commandant ordered that "ON ALL REC[ORD]S OTHER THAN DISCH[ARGE] CERT[IFICATE] CAUSE OF DISCH[ARGE] WILL BE SHOWN AS PHYSICAL DISABILITY INCIDENT TO SERVICE." R. at 131 (capital letters in original). On July 29, 1977, Mr. Kinnaman was discharged from active military service for physical disability incident to service. R. at 105, 128.

In August 1977, the veteran filed a claim with the VA for service connection for keratoconus. R. at 106–09. The VA sought medical records from a private physician, Dr. George Radich, whom the veteran claimed treated him for keratoconus in 1974. R. at 108, 110. Shortly thereafter, Dr. Radich submitted a statement to the VA declaring that he had treated Mr. Kinnaman in 1976 and had diagnosed "possible keratoconic changes." R. at 111.

In September 1977, the veteran underwent a VA general medical and special eye examination. R. at 116–17. The diagnosis was "[k]eratoconus, bilateral. Refractive areas and vicual [sic] acuity with best correction, VOD [vision *oculus dexter* (right eye)] 20/30, VOS [vision *oculus sinister* (left eye)] 20/20." R. at 117. The examiner noted without comment, "The disability

was determined to have developed in the service, prior to his discharge." R. at 116.

On October 20, 1977, a VA Regional Office (RO) denied the veteran's claim for service connection for keratoconus on the basis that "[k]eratoconus is a constitutional or developmental abnormality, not a disab[ility] under the law." R. at 118–19; *see* 38 C.F.R. § 4.9 (1991) ("[m]ere congenital or developmental defects, ... refractive error of the eye ... are not diseases or injuries in the meaning of [the law] for disability compensation purposes"). The rating decision listed the diagnostic code for keratoconus as "6035." R. at 119. The veteran was informed of the RO decision in November 1977 but did not appeal the decision. R. at 120.

In November 1986, the veteran sought to reopen his claim and submitted a vision report dated October 27, 1986, from an optometrist, Dr. Kirk L. Thompson (R. at 126–27), and copies of service medical and discharge records. R. at 128–51. On January 8, 1987, the RO continued and confirmed the denial of service connection for keratoconus, noting that "[m]ost evidence submitted are [sic] duplicates of ms [manuscripts?] in file. Add[itiona]l evidence considered does not establish a new factual basis for s[ervice] c[onnection]." R. at 152. The veteran did not appeal this action.

On July 27, 1989, the veteran filed a claim with the VA asserting that

> there has been a clear [and] unmistakable error in the rating decision of 10–20–77 wherein veteran was denied service connection for bilateral keratoconus as being constitutional and developmental and not a disability under law. Subsequent rating stated same reason. Under the rating schedule D[iagnostic] C[ode] 6035 Keratoconus is a ratable disability and should be so rated from that point forward. We ask that this be corrected.

R. at 155.

The next day, on July 28, 1989, the RO denied the veteran's claim, stating that "Veteran [is] n[on-]s[ervice-]c[onnected] for keratoconus [which] e[xisted] p[rior] t[o] s[ervice], [and was] not [service]-aggravat-

ed. S[ervice] c[onnection] denied 10–27–77, confirmed 1–8–87. No error shown." R. at 156. The veteran filed a timely notice of disagreement (NOD) with the July 28, 1989, rating decision. R. at 157. The VA sent Mr. Kinnaman a Statement of the Case (SOC), dated August 14, 1989. R. at 160–62. The VA noted on the SOC that the issue was "[s]ervice connection for keratoconus" and observed that the veteran's representative "contends the rating decision of October 20, 1977[,] was clearly and unmistakeably [sic] at error in denying benefits for the claimed condition." R. at 160. Under "Pertinent Laws and Regulations" on the SOC, the VA noted as follows:

A decision of a duly constituted rating agency, unappealed within one year, is final and binding, subject only to change on the basis of clear and unmistakable error. The claim may not thereafter be reopened or allowed except upon the submission of new and material evidence sufficient to constitute a reopened claim.

R. at 161 (citations omitted). Under "Decision," the VA noted that "[c]lear and unmistakable error has not been demonstrated to exist in the rating decision of October 20, 1977," and under "Reasons for Decision," the VA wrote the following:

The troubles with Mr. Kinnaman's vision were immediately noted at the time of the entrance examination. There is no evidence of an in-service trauma or other aggravation of the condition, nor does the evidence demonstrate that the deterioration in vision thereafter was more than would normally have been expected given the passage of time. There is no basis for reversing the decision of the earlier final rating decision.

*Id.*

The veteran subsequently perfected his appeal to the BVA. R. at 163. Before his claim was adjudicated by the BVA, his representatives submitted two statements on his behalf. R. at 165–70. The first statement noted that the October 20, 1977, rating decision "was clearly and unmistakably at error." More specifically, the veteran's representative observed as follows:

On October 20, 1977[,] the VA rating decision denied service connection because it was a constitutional or developmental abnormality, not a disability under the law. However, 38 CFR 4.84n [sic], Diagnostic Code 6053 [sic] lists keratoconus as a disability. The veteran was initially examined for an eye condition on May 23, 1974. Standard Form 93 did not indicate eye trouble. The final diagnosis by Drs. Franklin Chu and James Harmon on August 20, 1974[,] was early keratoconus, left eye. They stated "whether or not the condition existed prior to entry into the Coast Guard cannot be stated with absolute certainty."

. . . .

The denial in October, 1977 was clearly in error. . . . It is our belief that the issue of service connection has not been resolved in accordance to [sic] pertinent law, regulations and rating schedule provisions. We rely on the Board of Veterans Appeals to correct the original rating decision and hold that an obvious error exists.

R. at 165–67.

The second statement on behalf of the veteran also alleged clear and unmistakable error in the October 1977 rating action and stated in pertinent part as follows:

The veteran's claim for service connection for bilateral keratoconus was denied in an October 1977 rating decision on the grounds that the disorder represented a congenital or developmental abnormality and not a disease under the law. The veteran did not file a timely appeal to the decision. He reopened his claim in July 1989, asserting that the earlier rating decision was clearly and unmistakably erroneous. The claim was again denied, this time on the grounds that the keratoconus preceded service and was not aggravated by service. Our basic position in this case is that keratoconus is an acquired disease and not a "congenital or developmental" disorder, that it was not shown before service, and that it was first manifested in service. As such, service connection is warranted and the

original rating decision was clearly and unmistakably erroneous.

R. at 169–70.

On May 2, 1990, the BVA denied the veteran's claim for service connection, and Mr. Kinnaman filed a timely Notice of Appeal to this Court.

## ANALYSIS

### A.

In its May 2, 1990, decision, the BVA denied the veteran's claim for service connection for keratoconus on the grounds that the disorder was not incurred in, but rather existed prior to, service and that it was not aggravated in service. The Board did not address the veteran's allegation of clear and unmistakable error in the October 1977 rating decision originally denying his claim. The Board summarized the history of the claim under a section entitled ITEMS RELATING TO PRESENT APPELLATE STATUS:

> Service connection for bilateral keratoconus was also denied by an earlier rating decision of the originating agency in October 1977, which was not appealed. This appeal was initiated from a rating decision which denied the veteran's *reopened* claim for service connection for bilateral keratoconus. To afford the veteran every possible consideration, the Board has elected to consider the claim on a de novo basis.

*Philip A. Kinnaman*, BVA 90–09527, at 2 (May 2, 1990) (emphasis added).

■ A claim which is denied by the agency of original jurisdiction (AOJ) and for which an appeal to the BVA is not commenced within one year by the filing of an NOD with the denied claim is a "final" determination as a matter of law. 38 C.F.R. § 19.129 (1991) (superseded by 57 Fed.Reg. 4112–13 (1992), to be codified at 38 C.F.R. § 20.302); 38 U.S.C. § 7105(b)(1) (formerly § 4005(b)(1)). A recipient of a final adverse determination on a claim may reopen the claim by submitting new and material evidence. 38 U.S.C. § 5108 (formerly § 3008); *see Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991) ("BVA must perform a two-step analysis when a veteran seeks to reopen a claim based upon new and material evidence."); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991) (definition of new and material evidence).

Here, although the Board stated that "[t]his appeal was initiated from a rating decision which denied the veteran's *reopened* claim," the rating board which rendered the July 28, 1989, rating decision did not *reopen* the veteran's claim on the basis of the submission of new and material evidence. There is no evidence in the record that the veteran submitted anything to the VA that constituted new and material evidence. All that appears to have triggered the July 1989 rating decision was the statement (R. at 155), written on the veteran's behalf by his representative, alleging clear and unmistakable error in the October 1977 rating decision. R. at 118–19. In this regard, the Court recognizes that, although the term "reopened claim" refers, in its strictest sense, to previously denied claims which are "reopened" upon submission of new and material evidence, the term is occasionally used to refer to other types of claims. *See Abernathy v. Principi*, 3 Vet.App. 461, 464 (1992). The July 1989 rating decision reflects that the rating board, despite its use of the term "reopened claim," considered the claim as one alleging clear and unmistakable error in a prior final decision: "S[ervice] c[onnection] denied 10–27–77, confirmed 1–8–87. *No error shown*." R. at 156 (emphasis added). However, in addition to finding that the October 1977 rating board's determination (that keratoconus was not a disability under the law) did not constitute clear and unmistakable error, the rating board also determined that the veteran's disorder existed prior to service and was not aggravated in service. R. at 156. In his appeal to the BVA, the veteran continued to allege clear and unmistakable error in the October 1977 rating decision and also noted his disagreement with the July 1989 decision on the merits by stating that keratoconus "was not shown before service" but rather "was first manifested in service." R. at 169–70.

Section 3.105(a) of the regulations provides for the revision of previous decisions when error is shown:

(a) *Error.* Previous determinations on which an action was predicated, including decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, line of duty, and other issues, will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended....

38 C.F.R. § 3.105(a) (1991). This Court recently held that this regulation, although promulgated by the Secretary in the absence of a specific statutory mandate, was nevertheless a valid regulation, lawfully promulgated under the Secretary's broad powers to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and [which are] consistent with those laws." 38 U.S.C. § 501(a) (formerly § 210(c)(1)); *Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc). In addition, the Court held that, because 38 C.F.R. § 3.105(a) refers to "determinations on which an action was predicated," a "clear and unmistakable error" under § 3.105(a) "must be the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made." *Russell,* 3 Vet.App. at 313. Furthermore, the Court held in *Russell* that the "necessary jurisdictional 'hook'" enabling this Court to review a previous determination for clear and unmistakable error "is a decision of the BVA [over which we otherwise have jurisdiction] on the specific issue of 'clear and unmistakable error.'" *Id.* at 315.

■ The Court is presented here with a case where, in his claim to the AOJ in July 1989 and in his subsequent appeal to the BVA, the veteran specifically alleged clear and unmistakable error in a previous rating decision. However, in its decision, the Board affirms the RO's decision on the merits without specifically addressing the issue of clear and unmistakable error. This Court has held that "[w]ithout a final adjudication by the Board on this issue, the Court does not have jurisdiction to review it...." *Chisem v. Principi,* 3 Vet.App. 322, 329 (1992). As in *Chisem,* where clear and unmistakable error was raised by the claimant but not addressed by the Board, the proper course of action for this Court to take is to remand the case for the Board to consider this issue. Thus, in keeping with *Russell* and *Chisem,* we hold that this Court does not have jurisdiction to review the issue of clear and unmistakable error in the October 1977 AOJ decision in this case. However, the Court does have jurisdiction to review the Board's decision on the merits in this case (38 U.S.C. § 7252(a)), and we do so in part B below.

### B.

■ Basic entitlement to compensation for service-connected disabilities for veterans derives from 38 U.S.C. § 1110 which provides in pertinent part as follows:

For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service ... the United States will pay to any veteran thus disabled ... from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter....

38 U.S.C. § 1110 (formerly § 310). Generally, veterans are presumed to be in sound condition upon entrance into military service. 38 U.S.C. § 1111 (formerly § 311); *Bagby v. Derwinski,* 1 Vet.App. 225, 227 (1991). The relevant statute provides in pertinent part as follows:

For the purposes of section 1110 of this title, every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where *clear and unmistakable evidence* demonstrates that the injury or disease exist-

ed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C. § 1111.

Mr. Kinnaman was inducted into the Coast Guard on April 29, 1974. R. at 105. No eye disease was noted either on Mr. Kinnaman's preinduction examination on April 11, 1974 (R. at 56–59), or on his pretraining physical examination conducted on April 30, 1974. A few weeks later, on May 23, 1974, Mr. Kinnaman was examined by Dr. Harmon during a routine Coast Guard recruit eye examination (R. at 16, 18, 50, 55), and Dr. Harmon's impression was "probable early keratoconus". R. at 18, 55. In June 1974, Dr. Harmon reported to the Coast Guard that Mr. Kinnaman's condition was "tentatively diagnosed as keratoconus". R. at 15, 60. A final diagnosis of "early keratoconus, left eye" was not rendered until August 1974. R. at 50.

■ Because appellant's keratoconus was first diagnosed while in service, the burden of proof is on the government to rebut the presumption of sound condition upon induction by showing that the disorder existed prior to service and, if the government meets this requirement, by showing that the condition was not aggravated in service. The burden of proof is a formidable one: the Board must show by clear and unmistakable evidence that Mr. Kinnaman's keratoconus existed prior to service. 38 U.S.C. § 1111; see Akins v. Derwinski, 1 Vet.App. 228, 231–32 (1991). Whether or not there is such evidence is a legal determination which the Court reviews de novo. Bagby, 1 Vet.App. at 227.

■ In this case, the BVA found that a "finding with respect to bilateral keratoconus on the veteran's initial detailed ophthalmological examination in service, shortly after he entered on active duty, unequivocally establishes that the disorder preexisted the veteran's entry on active duty." Kinnaman, BVA 90–09527, at 4 (emphasis added). The Board also observed that "[a]lthough keratoconus was not noted [on the induction examinations], it is noteworthy that a detailed ophthalmologic examination was not conducted at the time." Id. at 3. Thus, the Board's position is that the tentative diagnosis of early keratoconus "shortly" after induction, coupled with the fact that the earlier examinations did not conduct detailed ophthalmologic examinations, "unequivocally" establishes that the disorder existed prior to service. We hold that this evidence is not "clear and unmistakable evidence" because a tentative diagnosis three weeks after induction and a final diagnosis four months after induction do not in themselves show clearly and unmistakably that the disease existed before service. Furthermore, a special ophthalmological examination that was never conducted and which may or may not have revealed the presence of the disease does not lend much, if any, support to the evidence.

The record contains other evidence, however, that leans somewhat in favor of the Board's holding but which the Board did not mention in its decision: In his letter to the Coast Guard of June 3, 1974, Dr. Harmon tentatively diagnosed Mr. Kinnaman's eye condition as keratoconus and wrote that "[h]istory and ocular signs indicate that the condition was present prior to C[oast] G[uard] induction." R. at 15 (emphasis added). In August 1974, after making a final diagnosis of early keratoconus, Dr. Harmon wrote in his report that "[w]hether or not the condition existed prior to entry into the Coast Guard cannot be stated with absolute certainty, although it is probable that the process began earlier." R. at 50 (emphasis added). In light of this additional evidence, the question becomes whether a doctor's statement that there are signs which indicate or suggest that the condition was present prior to induction and his opinion that it is probable, but not absolutely certain, that the condition began prior to service constitute clear and unmistakable evidence sufficient to rebut the presumption of sound condition. We hold that in this case this evidence, even when considered with the evidence that was noted by the BVA, does not constitute clear and unmistakable evidence.

In so holding, we note that the Coast Guard, based upon the findings of a PEB in 1977, ordered that Mr. Kinnaman be dis-

charged from active military service by reason of "physical disability incident to service." R. at 105, 128, 131. The PEB found, inter alia, that Mr. Kinnaman's keratoconus was incurred while in service, that it was incurred in the line of duty during time of war or national emergency, that it was not the result of willful neglect or intentional misconduct, and that the applicable VA diagnostic code number was 6035. R. at 97.

The Court notes that 38 C.F.R. § 3.1(m) provides in pertinent part as follows:

*In line of duty* means an injury or disease incurred or aggravated during a period of active military, naval, or air service unless such injury or disease was the result of the veteran's own willful misconduct. *A service department finding that injury, disease or death occurred in line of duty will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the requirements of laws administered by the Department of Veterans Affairs.*

38 C.F.R. § 3.1(m) (1991) (emphasis added in second sentence). The Board erred in not considering this regulation in its decision. In times of war, the Coast Guard is part of the Department of the Navy. 14 U.S.C. § 3 ("Upon the declaration of war or when the President directs, the Coast Guard shall operate as a service in the Navy, and shall so continue until the President, by Executive Order, transfers the Coast Guard back to the Department of Transportation."). Therefore, the Coast Guard's finding that the veteran's eye disease was incurred in the line of duty, besides being evidence in support of the veteran's claim for service connection, is, according to this regulation, binding on the VA.

Upon review of the evidence in this case and for the reasons noted above, we hold that there is no clear and unmistakable evidence that the veteran's bilateral keratoconus existed prior to service, and he is therefore entitled to a grant of service connection. *See Bagby*, 1 Vet.App. at 227.

**C.**

As noted above, because the Board did not address the issue of clear and unmistakable error in the October 1977 AOJ's rating decision, we lack jurisdiction to review the matter. Therefore, despite our reversal on the merits, this case must be remanded for a determination by the BVA on the matter of clear and unmistakable error. Should the Board's determination on remand not be favorable to appellant, he must initiate another appeal to this Court. Had the matter been addressed by the Board in the first place, much expense could have been avoided and much time saved on the part of all concerned, appellant, the VA, the Board, and this Court. Therefore, in the interest of economy, judicial and otherwise, the Court reiterates here its holding in *Azurin v. Derwinski*, 2 Vet.App. 489, 492 (1992), and other cases that the Board *must address* in its decisions all of the issues raised, whether they are raised directly, as here, or may be construed from a liberal reading of claimants' substantive appeals. *See also Mingo v. Derwinski*, 2 Vet.App. 51, 54 (1992); *Myers v. Derwinski*, 1 Vet.App. 127, 129 (1991); 38 C.F.R. § 19.123 (1991) (superseded by 57 Fed.Reg. 4112 (1992), to be codified at 38 C.F.R. § 20.202).

## CONCLUSION

Accordingly, for the reasons stated above, the May 2, 1990, decision of the BVA is REVERSED and the case REMANDED for an award of service connection for bilateral keratoconus and for adjudication of the veteran's claim of clear and unmistakable error in the 1977 AOJ decision.