**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 02-1604

MARK A. STOVER, APPELLANT,

V.

GORDON H. MANSFIELD,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 10, 2006            Decided    November 6, 2007        )

*David Landers*, of Washington, D.C., for the appellant.

*Ralph G. Davis,* with whom *Tim S. McClain,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Edward V. Cassidy, Jr.*, Deputy Assistant General Counsel, all of Washington, D.C., for the appellee.

Before HAGEL, DAVIS, and SCHOELEN, *Judges*.

DAVIS, *Judge*: The appellant, Mark A. Stover, appeals through counsel from a May 30, 2002, Board of Veterans' Appeals (Board) decision that denied his service-connection claim for a preexisting left-foot disorder because the disorder was not aggravated beyond its natural progression during service. On September 14, 2004, the Court affirmed the Board's decision in a single-judge order. Mr. Stover subsequently requested panel consideration, which was granted for the Court to address the following issue: Whether a service department's award of severance pay by operation of 10 U.S.C. § 1203 includes an implied finding that the servicemember's disability was incurred or aggravated in the line of duty that is binding on VA and, if so, whether such a finding mandates service connection. The Court will withdraw the September 2004 order and issue this opinion in its stead, set aside the 2004 Board decision and remand the claim.

**I. BACKGROUND**

Mr. Stover served on active duty in the U.S. Navy from July 1988 to November 1994. His May 1988 entrance examination report noted that he had a congenital left club foot, and he entered service with a medical waiver. While in service, in March 1994, Mr. Stover struck the inside of his left ankle on a car door frame. In September 1994, a physical evaluation board (PEB) found him unfit for service as a result of a congenital club foot deformity. The PEB determined that his disability met the criteria for a 10% disability rating, and he would be "separated from the naval service with severance pay, but without further disability benefits." Record (R.) at 153-54. As a result, he received $15,465.60 in disability severance pay. The PEB made no express determination as to whether the disability was incurred in the line of duty.

In December 1994, Mr. Stover applied for VA disability benefits for, among other things, a left congenital club foot. An April 1995 Wichita, Kansas, VA regional office (RO) decision denied his service-connection claim after concluding that there was no evidence of trauma in service that would have resulted in aggravation of his preexisting disability beyond its normal progression. Mr. Stover appealed that decision, and in April 1998, the Board sought a medical opinion from the Veterans Health Administration (VHA) to determine whether the worsening of Mr. Stover's left-foot disorder was as a result of his military service. In the resulting May 1998 opinion, Dr. Thomas McLaughlin concluded that "[t]he natural history of this type of deformity is that of gradual increase in symptoms and I do not believe that I can state that his condition has been aggravated by his time in the service." R. at 288-89. In a June 1998 decision, the Board continued to deny service connection for Mr. Stover's left-foot disorder, concluding that, during service, it had not worsened beyond the natural progress of the disorder. Mr. Stover appealed that decision.

In May 1999, this Court granted the parties' joint motion to remand the claim on the basis that the Board failed to address the presumption of aggravation and because Dr. McLaughlin's determination "appears somewhat equivocal." R. at 318. In January 2000, the Board again sought a VHA opinion as to whether it was at least as likely as not that the veteran's disorder had worsened beyond its natural progression. In the March 2000 response, Dr. Matko Milicic opined that "subjective complaints of increasing pain . . . during military service are attributable to [the] natural progress of this congenital disorder . . . [and] are not beyond that of the natural progress of this disorder." R. at 338. In June 2000, the Board continued to deny service connection for the disorder, finding that the left club foot preexisted service and was not aggravated during service beyond the

2

natural progress of the disorder. Mr. Stover appealed that Board decision.

In September 2001, the Court again granted the parties' joint motion to remand. The only issue in dispute was whether the Board applied the correct burden of proof in rebutting the presumption of aggravation. The parties agreed that the Board had applied a "clear and convincing" evidence burden rather than the correct "clear and unmistakable" evidence burden. R. at 411. The Board was also directed to address whether Mr. Stover's separation with severance pay would lead to service connection by application of 38 C.F.R. § 3.1(m).

On May 30, 2002, the Board issued its decision here on appeal. In it, the Board determined that the presumption of aggravation was applicable because Mr. Stover's left-foot function diminished during service. The Board noted, however, that "the outcome of this appeal rests on whether there is clear and unmistakable evidence to rebut the presumption of aggravation." R. at 11. The Board concluded that, because the VA medical opinions concluded that the increase in the severity of the disorder was due to the natural progress of the disease, the evidence clearly and unmistakably rebutted the presumption of aggravation. The Board further noted that there was no PEB finding that Mr. Stover's foot disorder was incurred in service, in the line of duty; the Board concluded that, to the extent that it may be argued that *Kinnaman v. Principi*, 4 Vet.App. 20 (1993), and 38 C.F.R. § 3.1(m) (2006) applied, it would be patently inconsistent with laws administered by VA to award service connection when there is compelling medical evidence in the record that the preexisting foot disorder was not aggravated beyond the natural progress of the disorder.

## II. CONTENTIONS ON APPEAL

Mr. Stover asserts that the Board erred when it found that the presumption of aggravation was rebutted by clear and unmistakable evidence that the increase in severity of his preexisting disability was due to natural progress of the disorder. He contends that the medical opinion by Dr. Milicic was tainted by the fatally flawed questions posed to him and by his failure to analyze all of the evidence, and that the opinion failed to provide the degree of certainty required to meet the "clear and unmistakable" standard. Mr. Stover also maintains that, based on 38 C.F.R. § 3.1(m) and *Kinnaman, supra*, the PEB's finding that his disability was the result of active service was binding on VA, and that there was a favorable service department line-of-duty determination that was not patently inconsistent with VA criteria for establishing service connection.

3

The Secretary disagrees, contending that clear and unmistakable evidence existed to rebut the presumption of aggravation. Specifically, the Secretary argues that two VA medical opinions determined that the increase in severity was due to the natural progress of the disease and that those determinations were sufficient to rebut the presumption of aggravation. The Secretary proffered no argument as to Mr. Stover's "patently inconsistent" contention.

### III. ANALYSIS

Mr. Stover argues that the Department of the Navy determination that awarded him severance pay is a favorable determination that his congenital club foot disability was aggravated in the line of duty and that such determination is binding on VA under 38 C.F.R. § 3.1(m). Section 3.1(m) provides: "*A service department finding that injury, disease or death occurred in the line of duty will be binding on the Department* unless it is patently inconsistent with the requirements of laws administered by the Department of Veterans Affairs." 38 C.F.R. § 3.1(m) (emphasis added). Because this regulatory provision pertains to the "line of duty" definition, it is axiomatic that § 3.1(m) is inapplicable where there is no line-of-duty determination. Therefore, in order to entertain Mr. Stover's argument, the Court must first determine whether a line-of-duty determination was made in this case.

#### A. 10 U.S.C. § 1203(b)(4)(A)

Severance pay is awarded at separation from service for veterans who meet certain criteria as to disability. *See* 10 U.S.C. § 1203(b)(4)(A). In pertinent part, the following determinations must be made: (1) The veteran had fewer than 20 years of service; (2) the disability is not the result of intentional misconduct; (3) the disability is permanent in nature; (4) the disability is rated less than 30% under VA's disability-rating schedule and is the proximate result of performing active duty or was incurred "in the line of duty" after September 14, 1978. 10 U.S.C. § 1203(b)(4)(A).

The Court first notes that the statute pertaining to severance pay requires that the disability be *either* "the proximate result of performing active duty" *or* "incurred in the line of duty." 10 U.S.C. § 1203(b)(4)(A). In construing the statute, we must start with its plain meaning and contextual history. *Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002); *see also Lee v. West*, 13 Vet.App. 388, 394 (2000); *Savage v. Gober*, 10 Vet.App. 488, 495 (1997). Prior to a statutory change in 1978, a service member could receive severance pay for an injury only if the injury was

4

"the proximate result of performing active duty" or "incurred in the line of duty in time of war or national emergency." *See* 10 U.S.C. § 1203 (1976). Thus, unless the injury was incurred during a time of war or national emergency, the service member had to establish a causal connection between his injury and the *performance* of active duty. In 1978, the statute was changed to its present form: Any injury that was incurred "in the line of duty" after September 14, 1978, entitles the injured servicemember to severance pay (if he or she fulfilled other requirements not at issue here). *See* 10 U.S.C. § 1203(b). With this change, the servicemember was not required to establish the causal connection between the injury and the performance of active duty. Instead, the servicemember had only to show that the injury occurred during active duty (and was not the result of misconduct).

This change in law is a liberalizing provision, and any injury that would occur as the proximate result of performing active duty would necessarily also be "in the line of duty." The Department of Defense's definition of "in the line of duty" focuses on duty status (active duty), while "proximate result" focuses on causation. *Compare* DoD Instruction 1332.38, E2.1.1.8 ("L[ine ]O[f ]D[uty] Investigation") *with* DoD Instruction E2.1.29 ("Proximate Result"). Because "proximate result" requires that the injury was caused *by performing* active duty, it is a subset of the definition of "in the line of duty"; "in the line of duty" requires only that the injury occurred during active duty and not as the result of willful misconduct. Therefore, a service department award of severance pay for any injury necessarily contains an implicit finding that the injury was incurred "in the line of duty." The statute still maintains a distinction between an injury incurred as the proximate result of performing active duty and an injury that was incurred in the line of duty prior to September 14, 1978. If the servicemember was injured "in the line of duty" before September 1978, he or she would be entitled to severance pay only if the injury was also suffered in time of war or national emergency; if the servicemember did not suffer the injury during war or national emergency, the servicemember would not be eligible for severance pay unless the injury was the "proximate result of performing active duty." 10 U.S.C. § 1203.

The relevant service department in this case is the Department of the Navy. Navy department determinations of injury "in the line of duty" include any injury incurred during active duty that is not the result of criminal conduct, alcohol or drug abuse, etc. *See* Secretary of the Navy Instruction (SECNAVINST) 1850.4E (Apr. 30, 2002), Enclosure 3 (Disability Evaluation Policies), para. 3410 (defining line of duty for disability purposes); *see also* Department of the Navy, Manual

5

of the Judge Advocate General para. 0220(a) (identifying the circumstances under which a line of duty investigation must be conducted). When a servicemember suffers an in-service injury or disease, the injury or disease is "presumed to have been incurred in the line of duty and not as a result of misconduct unless contrary findings are made." *Id.* Therefore, because the injury or disease is presumed to be "in the line of duty" if it is not the result of the enumerated circumstances of misconduct, an in-service "in the line of duty" investigation is not making an "in the line of duty" determination so much as it is making a finding of the absence of misconduct. If there is no question as to whether misconduct was involved with the injury or disease, then there would not be an explicit finding that the injury was incurred "in the line of duty" because the Navy regulations state that it is presumed to be "in the line of duty" and would not require an explicit finding. This is precisely what occurred in this case, as the report of the Navy's Medical Evaluation Board stated: "LOD Required: NO." R. 161. By finding that a specific line of duty determination was not required, the departmental presumption of "in the line of duty" attached. *See Ashley v. Derwinski*, 2 Vet.App. 307, 308-09 (1992) (holding that "there is a presumption of regularity under which it is presumed that government officials 'have properly discharged their official duties'" (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926))). Therefore, the Court concludes that, consistent with the service department regulations, in the absence of an explicit line of duty determination, the Department of the Navy makes an implicit line of duty finding when it awards a veteran severance pay.

Because Mr. Stover received severance pay pursuant to his separation from the U.S. Navy in 1994, we hold that the service department necessarily found that his disability was incurred or aggravated in the line of duty. The Court concludes that the line of duty finding is binding on VA, pursuant to 38 C.F.R. § 3.1(m).

That finding, however, does not necessitate a finding of service connection. In order to be so eligible, there must be a causal relationship between the aggravation of the disability and Mr. Stover's active service. *See Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed Cir. 2004) (holding that "while section 105(a) establishes a presumption that the disease or injury incurred [or aggravated] during active duty is service-connected, the veteran seeking compensation must still show the existence of a present disability and that there is a causal relationship between the present disability and the injury, disease, or aggravation of a preexisting injury or disease incurred during

6

active duty"). Further, even if the service department determination did contain a finding that Mr. Stover's condition was aggravated beyond the natural progress of the disease, the Court holds that the text of § 3.1(m) does not bind VA to accept such a finding. That regulation only binds VA to accept the service department's determination regarding whether an occurrence was "in line of duty." We note here that neither party provided the Court with regulatory history to help it interpret the breadth of this regulation beyond its text.

Reviewing the text of § 3.1(m), we find that its terms clearly delimit its applicability:

*In line of duty* means an injury or disease incurred or aggravated during a period of active military, naval, or air service unless such injury or disease was the result of the veteran's own willful misconduct or, for claims filed after October 31, 1990, was a result of his or her abuse of alcohol or drugs. A service department finding that injury, disease or death occurred in line of duty will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the requirements of laws administered by the Department of Veterans Affairs. Requirements as to line of duty are not met if at the time the injury was suffered or disease contracted the veteran was:
(1) Avoiding duty by desertion, or was absent without leave which materially interfered with the performance of military duty.
(2) Confined under a sentence of court-martial involving an unremitted dishonorable discharge.
(3) Confined under sentence of a civil court for a felony as determined under the laws of the jurisdiction where the person was convicted by such court.

38 C.F.R. § 3.1(m); *see also* 38 U.S.C. § 105. When interpreting a statute or regulation, the "'starting point is its language.'" *Otero-Castro*, 16 Vet.App. at 380 (citation omitted) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)). It is worth noting that the statute does not include the portion of § 3.1(m) requiring the Secretary to accept a service department's line of duty finding; rather, the regulatory provision is a self-imposed limitation on the Secretary's broad authority to consider and weigh evidence in the adjudication of an application for benefits, including making a finding as to whether an injury or disease was incurred in the line of duty. *See* 38 U.S.C. § 511 (providing that the Secretary shall decide all questions of law and fact necessary to a decision on veterans benefits); *see also* 38 U.S.C. § 105.

The first and third sentences of § 3.1(m) define the limits of a line of duty determination. The first sentence refers to the temporal connection between the disability under consideration and the period of the claimant's service, excluding disabilities resulting from willful misconduct (or the

7

abuse of alcohol or drugs under some circumstances). Similarly, the third sentence and numbered exceptions delineate circumstances or actions by the claimant that preclude a line of duty determination, even though an injury may have occurred during the period corresponding to the claimant's military service. The second sentence imposes an obligation on VA to accept a service department determination that a condition was incurred or aggravated in the line of duty. Nothing else in the regulation speaks directly–or obliquely–to the binding nature of any other service department determination. Regulatory § 3.1(m) notably does not discuss service department findings about the circumstances of how a condition might have been incurred or aggravated, or whether any aggravation of a preexisting condition–though in the line of duty–might have been beyond the natural progress of the disease. *See* 38 U.S.C. § 1153.

In *Kinnaman*, *supra*, the Court evaluated, as part of the evidence in the case to rebut the presumption of soundness, a Coast Guard PEB report that found that the veteran's condition "was incurred while in service, that it was incurred in the line of duty during time of war or national emergency, that it was not the result of willful neglect or intentional misconduct, and that the applicable VA diagnostic code number was 6035." *Id.* at 28. The *Kinnaman* Court went on to discuss the applicability of 38 C.F.R. § 3.1(m), which the Board had not considered in its decision, apparently because the Board ignored the fact that the Coast Guard, in which the veteran had served, "[i]n times of war . . . is part of the Department of the Navy," meaning that 38 C.F.R. § 3.1(m) would apply to a Coast Guard line of duty determination from that period of time. *Id*. The Court added that "the Coast Guard's finding that the veteran's eye disease was incurred in the line of duty, besides being evidence in support of the veteran's claim for service connection, is according to this regulation binding on VA." *Id*. Thus, *Kinnaman* held that the Coast Guard's line of duty determination, was, "according to [§ 3.1(m)], binding on the VA," and portions of the PEB report in that case could serve as evidence in support of a claim for service connection. *Id*. In other words, *Kinnaman* held that the Board erred by failing to consider the applicability of § 3.1(m) and the binding effect of the service department's line of duty determination.

Mr. Stover argues that *Kinnaman* is applicable, regardless of whether the service department finding is based on in-service incurrence, as is the case in *Kinnaman*, or based on in-service aggravation of a preexisting condition, as in his case. He is correct that *Kinnaman* applies to this case. But based on the limited scope of VA's regulatory language, *Kinnaman* does not require that

8

VA award service connection. As discussed above, VA is bound only by the service department's line of duty determination. Findings not related to whether the condition in question was incurred or aggravated in the line of duty, whether they be express or implied, that the service department might make in conjunction with the award of severance pay are not binding on VA.

That is not to say, however, that service department determinations have no place in VA adjudications. Such findings may be used as evidence supporting or disproving a grant of VA benefits. *See*, *e.g.*, SECNAVINST 1850.4E, Enclosure 3, para. 3804m (rating of mental impairments existing prior to service); s*ee also Kinnaman*, 4 Vet.App. at 22-28 (holding that there was not clear and unmistakable evidence to find that condition preexisted service, where evidence of record included explicit PEB finding of in-service incurrence and evidence weighing against the claim was equivocal). Thus, if aggravation during service was in question, the service department's determination of aggravation, while not binding on VA, is evidence in favor of such a finding and should be weighed by the Board along with other evidence on the issue.

B. Presumption of Aggravation

Having found that § 3.1(m) does not apply to VA's determination of whether Mr. Stover's condition was aggravated in service beyond the natural progress of the disease, the Court returns to the provision that does govern this determination. Where there is an increase in disability during service, a preexisting injury will be presumed to have been aggravated by military service, "unless there is a specific finding that the increase in disability is due to the natural progress of the disease." 38 U.S.C. § 1153; 38 C.F.R. § 3.306(b). This presumption may be rebutted by clear and unmistakable evidence. *See Cotant v. Principi*, 17 Vet.App. 116, 131-32 (2003); *see also* 38 C.F.R. § 3.306(b) (2007). The clear-and-unmistakable-evidence standard is an "onerous" one, and requires that the no-aggravation result be "undebatable." *See Laposky v. Brown*, 4 Vet.App. 331, 334 (1993) (citing *Akins v. Derwinski*, 1 Vet.App. 228, 232 (1991)); *see also Vanerson v. West*, 12 Vet.App. 254, 258, 261 (1999)). The determination of whether the record contained clear and unmistakable evidence of sufficient weight to rebut this presumption of aggravation is subject to de novo review by this Court. *See Cotant*, 17 Vet.App. at 130; *see also Crowe v. Brown*, 7 Vet.App. 238, 247 (1994) (citing *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991)).

Because Mr. Stover's disability was noted at entry and increased in severity during service, it is uncontroverted that the presumption of aggravation applies. In this case, the Board first found

that there was no factual dispute that Mr. Stover entered service with a congenital left-foot disorder. The Board also conceded that the level of disability attributable to his left foot increased in severity during service, thus triggering the presumption of aggravation. The Court is therefore left to determine solely whether the Board properly considered the evidence of record when it determined that clear and unmistakable evidence rebutted the presumption of aggravation.

The Board discussed records dating to the appellant's time in service, including the PEB report, and the appellant's service separation report, which, according to the Board, indicated that the appellant's "left foot was reportedly inflamed since May 1994, secondary to trauma," and that the "left club foot was not considered disqualifying for separation." R. at 8. The Board also noted that "[t]he record provides medical evidence that the veteran's left foot function diminished during his active military service," and observed that the appellant "had been able to do physical training for the previous two years, as required, but that he was unable to do running types of sports." R. at 11. Concluding that the presumption of aggravation applied to adjudication of the claim, as the appellant's condition was noted upon entry into service, the Board determined that "the outcome of this appeal rests on whether there is clear and unmistakable evidence to rebut the presumption of aggravation." R. at 11.

From that point, the Board considered two opinions by VA medical examiners. The Board concluded that Dr. Milicic's opinion "plainly states that the veteran's complaints of pain in service were due to the natural progress of the disorder, and this response adequately removes the disability from a presumption or finding of aggravation." R. at 14. The Board also discussed the potential applicability of *Kinnaman*, provided several reasons it considered *Kinnaman* to be distinguishable from the instant case, and concluded that,

> [t]o the extent that it may be argued that *Kinnaman* and 38 C.F.R. § 3.1(m) apply in this case because the veteran received severance pay due to his foot disorder, the Board finds that it would be "patently inconsistent" with VA laws to award service connection when there is compelling medical evidence in the record that the veteran's preexisting left foot disorder was not aggravated in service beyond the natural progress of the disorder.

R. at 18.

As discussed above, *Kinnaman* states that the service department's findings are positive evidence that should be considered when determining whether the presumption of aggravation was

rebutted. The Board decision at issue in this case did not discuss the service department's report and the necessary findings made by the service department to support an award of severance pay as evidence potentially favorable to the appellant on the question of whether the appellant's condition was aggravated in service. Instead, the Board limited its discussion of the report solely to its effect on the line of duty question. The Court accordingly concludes that the Board misapplied *Kinnaman* by failing to account for all of the evidence of record, rendering inadequate its statement of reasons or bases for concluding that clear and unmistakable evidence rebutted the presumption of aggravation in this case. *See* 38 U.S.C. § 7104(d)(1).

The Court will remand the matter for the Board to determine what evidence regarding aggravation of the appellant's condition may be gleaned from the service department report, including the implied findings necessarily contained therein, then to weigh that evidence against other evidence of record in the first instance. *See Owens v. Brown,* 7 Vet.App. 429, 433 (1995) (the weighing of evidence is particularly suited for the Board, not the Court); *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (the Court is not to conduct de novo factfinding, but should remand to the Board for it to find facts in the first instance). On remand, the appellant is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by the Court).

## IV. CONCLUSION

After consideration of the appellant's and the Secretary's briefs and arguments presented during oral argument, and after a review of the record on appeal, the Court will SET ASIDE the May 30, 2002, Board decision and REMAND the matter for further proceedings.