**George A. SMITH, Jr., Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–1369.

United States Court of Veterans Appeals.

Feb. 14, 1996.

George A. Smith, Jr., pro se.

Robert E. Coy, Acting General Counsel; Norman G. Cooper, Assistant General Counsel; Pamela L. Wood, Deputy Assistant General Counsel; and Mary Ann Flynn, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS and STEINBERG, Judges.

IVERS, Judge, filed the opinion of the Court. KRAMER, Judge, filed a concurring opinion.

IVERS, Judge:

George A. Smith, Jr., appeals from a July 23, 1992, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for

service connection for a seizure disorder as a residual of a concussion or gunshot wound. *George Smith,* BVA 92–17472, (July 23, 1992). The appeal presents two questions. First, can the BVA Chairman's sua sponte grant of reconsideration of a Board decision, precipitated by a Notice of Disagreement (NOD) predating November 18, 1988, and thus beyond the jurisdictional reach of this Court, defeat the right of judicial review of a later Board decision with an NOD permitting judicial review? We hold that the right of judicial review may not be so defeated. The second question is whether the Board erred in denying the appellant's claim on the merits. We hold that it did err in the four ways set forth in part II.B. of this opinion.

## I. Facts

The appellant served in the United States military from February 1942 until July 1945. Record (R. at 48, 221). The service medical records (SMRs) indicate that he served in the European Theater of Operations and was wounded in action on five occasions: on November 3, 1943, he was wounded in the right upper arm, elbow, and wrists (R. at 22); on December 30, 1943, he suffered a cerebral concussion and minor abrasions (R. at 27, 48); on September 3, 1944, he sustained a gunshot wound through the left cheek which penetrated the neck (R. at 25, 29); on January 8, 1945, he received abrasions to the right arm and back (R. at 31); and on January 10, 1945, he suffered a sprained back after being knocked down by a shell explosion (R. at 33–34). He was awarded the Purple Heart five times. R. at 50. A December 1943 SMR contained a diagnosis of "concussion [illegible]." R. at 27; *see* R. at 43. The record also noted that in February 1944 the appellant was hospitalized with "psychoneurosis, anxiety state, chronic, recurrent, severe" incurred in the "line of duty." R. at 43–44. The July 1945 separation examination noted the cerebral concussion as a "[p]resent physical defect[ ]", but it also noted that his neurological diagnosis was "normal." R. at 48. In August 1945, he was denied service connection for a cerebral concussion and a back sprain. R. at 54.

A March 1984 physician's note indicated that the appellant was being prescribed anti-seizure medications and had had neurological problems since 1980. R. at 62–64. Dr. Douglas McNinch, a neuropsychologist, and Dr. David Wilson, a psychology intern, noted that his neurological problems had resulted in episodic confusion, disorientation, and memory loss. R. at 64.

A January 1985 VA Regional Office (RO) decision denied the appellant service connection for a cerebral concussion, cerebrovascular disease with partial complex seizure disorder, and status post bilateral carotid endarterectomy. R. at 110–12. Endarterectomy is the surgical removal of the inner layer of an artery which has thickened or occluded. WEBSTER'S MEDICAL DESK DICTIONARY 210 (1986) (hereinafter WEBSTER'S). He filed a timely NOD, a Statement of the Case (SOC) was issued (R. at 113–15), and the appeal progressed (R. at 117). In May 1985, the appellant testified that his current medical problems were directly related to his service injuries, pointing out that he was diagnosed with psychoneurosis following an episode where he was buried in a foxhole with the body of another soldier on top of him. R. at 122–23, 126. He also testified in May 1985 that, although physicians have asked him whether he had had any head injuries subsequent to service, "the only injuries that I have ever had that I could relate to this problem were the concussions that I suffered back in military service." R. at 124. In November 1985, the BVA denied service connection for both disorders. R. at 140. The veteran requested reconsideration (R. at 142), and in January 1987 the BVA denied service connection because the appellant did not provide any medical opinions associating the cerebrovascular disease with the concussion reported in service (R. at 170).

In January 1988, in an attempt to reopen his claim, the appellant submitted to the RO several articles relating seizures to head trauma. R. at 182, 197. Reopening was denied for lack of new and material evidence. R. at 202. In March 1988, the appellant appeared at a hearing before the RO where he contended, inter alia, that his rating decision of June 1946 (R. at 54–55), which af-

firmed the August 1945 RO decision (R. at 53), did not include the back disorder and the cerebral concussion, and therefore, this error should have "amended" or "corrected" his claim. R. at 207. VA treated this as an NOD, an SOC was issued, and he filed an appeal to the BVA. R. at 222–23. A December 1988 BVA decision remanded the case to the RO to adjudicate the question of the gunshot wound to the face in relation to a seizure disorder. R. at 232. The Board stated:

> Thus, strictly speaking, the prior Board decisions were not "final" adjudicatory actions on this particular point. The veteran is therefore entitled to a decision "on the merits" for at least this aspect of his claim rather than having it simply addressed as a reopened claim after final adjudication as was done in this case.

*Id.* The RO reviewed the matter and held that "it is not within the realm of possibility much less probability that seizures commencing about 1983 are due to the left cheek wound in 1944." R. at 234. An SOC was issued (R. at 238), and the appellant appealed to the BVA. In December 1989, the BVA requested an Independent Medical Expert opinion, and presented two questions to the expert. R. at 247. In February 1990, Dr. Calvin Calhoun, a neurologist, examined the appellant's medical records (including his SMRs) and submitted his response as follows:

> [BVA:] What is the likelihood that the veteran's seizure disorder may be independently attributable to head injury?

> [Dr. Calhoun:] It is statistically unlikely that the veteran's seizure disorder may be "independently" attributable to closed (none [sic] penetrating) head injury 30 years after the events. Most research on the subject indicates subsequent seizure occurrence greatest in the first year and at most 5% after 20 years. There are no good documented 30 year (or more) studies at this time.

> On the other hand, small undetected areas of vascular damage and some gliotic areas with impaired neurons may become irritative foci with subsequent decrease in per-

fusion with transient ischemia and/or hypoxemia. [R. at 254.]

> [BVA:] If the seizure disorder may reasonably be related to head injury, what is the likelihood that the disorder is a sequela of: (a) the gunshot wound of the face in service; or (b) the cerebral concussion(s) in service; or (c) a combination thereof?

> [Dr. Calhoun:] The seizure disorder may be related to subclinical brain injury with precipitation by subsequent cerebrovascular disease which developed over the years since the closed head injuries (concussion). It may be noted that the "gunshot wound of the face in service" (with attending fracture of the mandible and neck injury) of itself [sic] may not be related to the seizures which emanate from the brain parenchyma. On the other hand, there was accompanying loss of consciousness which is the chief sign of concussion. Thus, the facial injury caused an additional concussion making the likelihood that the underlying cause of the seizure disorder may be a combination of "(a)" and "(b)". [R. at 255.]

On June 14, 1990, after de novo review of his claim of service connection for a seizure disorder as a residual of a concussion or gunshot wound, the BVA denied service connection and noted that the SMRs did not show any loss of consciousness associated with the gunshot wound as reported by Dr. Calhoun. R. at 266. On June 21, 1990, the appellant requested that his claim be reopened as he was submitting "new evidence" regarding "brain" concussion. R. at 269. He submitted duplicate SMRs. R. at 270–73. The RO denied reopening of the claim. R. at 275.

In July 1990, he submitted results of a brain scan from October 1989 (R. at 280) and an electroencephalogram (EEG), also from October 1989 (R. at 281). The appellant also referred to "brain mapping" results (R. at 277), which appear later in the record as part of a motion for reconsideration. *See* R. at 333. He was informed by the RO that this information was new but not material because it failed to show service connection. R. at 283. In September 1990, the appellant filed an NOD. R. at 285. On August 13, 1991, the BVA denied reopening of the sei-

zure disorder claim for lack of new and material evidence. R. at 317.

The appellant submitted a statement contending that the BVA had substituted its own medical opinion for that of Dr. Calhoun, failed to provide reasons and bases as to why he could not fall within the five percent "pertinent population deviation" discussed by Dr. Calhoun (R. at 341), and failed to apply the benefit of the doubt in his favor. The appellant filed a motion for reconsideration, dated November 21, 1991, of the August 13, 1991, BVA decision. R. at 320–22. The Deputy Vice Chairman of the BVA, in an order which is not dated but was apparently received on March 17, 1992 (*see* R. at 7), granted the appellant's motion for reconsideration, stating:

> I am hereby ordering reconsideration by an expanded panel of the Board of Veterans' Appeals (BVA) as provided by section 7103(b) of title 38, United States Code, of BVA's decisions dated June 14, 1990, and August 13, 1991. The reconsideration decision, once promulgated, will replace those decisions and constitute the final Board decision in this matter.

R. at 339. On July 23, 1992, the BVA noted that there had been no final prior BVA adjudication of the appellant's claim, reviewed the appeal on a de novo basis, and denied service connection for a seizure disorder. *Smith,* BVA 92–17472, at 4. The appellant filed a timely appeal with this Court. On September 16, 1994, the Secretary filed an advisory letter with the Court noting that the Chairman's order granting reconsideration nullified earlier BVA decisions and deprived those decisions of finality.

## II. Analysis

### A. Jurisdiction

■ This Court reviews final BVA decisions. 38 U.S.C. §§ 7252(a), 7266(a); *Matter of Wick,* 40 F.3d 367, 370 (Fed.Cir.1994); *Mayer v. Brown,* 37 F.3d 618, 619–20 (Fed. Cir.1994); *Wachter v. Brown,* 7 Vet.App. 396, 397 (1995) (per curiam order). A BVA decision is final unless a timely appeal is filed with this Court, or unless the Chairman of the BVA orders reconsideration on the Chairman's initiative or on the motion of the

appellant. 38 U.S.C. § 7103(a); 38 C.F.R. §§ 20.1000, 20.1001 (1995). Section 7103 of title 38 of the U.S.Code provides:

> (a) The decision of the Board determining a matter under section 7102 of this title is final unless the Chairman orders reconsideration of the decision in accordance with subsection (b). Such an order may be made on the Chairman's initiative or upon motion of the claimant.
>
> (b) . . . .
>
> . . . .
>
> (3) . . . . The decision of the panel shall constitute the final decision of the Board.
>
> (c) The Board on its own motion may correct an obvious error in the record, without regard to whether there has been a motion or order for reconsideration.

Thus, once a case is reconsidered, the "decision of the panel shall constitute the final decision of the Board" and the previous BVA decision is nullified. *Boyer v. Derwinski,* 1 Vet.App. 531, 532–35 (1991).

VA regulations outline in more detail when reconsideration may be accorded: (1) on allegation of obvious error of fact or law; (2) on new and material evidence from service department records; or (3) where allowance of benefits was influenced by false or fraudulent evidence. 38 C.F.R. § 20.1000. A motion for reconsideration must be in writing and include the name of the veteran or other claimant, the VA file number, and the date of the BVA "decision, or decisions, to be reconsidered." 38 C.F.R. § 20.1001(a). In addition:

> [The motion] must also set forth clearly and specifically the alleged obvious error, or errors, of fact or law in the applicable decision, or decisions, of the Board or other appropriate basis for requesting Reconsideration. If the applicable Board of Veterans' Appeals decision, or decisions, involved more than one issue on appeal, the motion for reconsideration must identify the specific issue, or issues, to which the motion pertains. Issues not so identified will not be considered in the disposition of the motion.

38 C.F.R. § 20.1001(a).

■ This Court's appellate jurisdiction derives exclusively from the statutory grant

of authority provided by Congress, and the Court may not extend that jurisdiction beyond that permitted by law. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski*, 928 F.2d 392 (Fed.Cir.1991); *Skinner v. Derwinski*, 1 Vet.App. 2 (1990). In establishing this Court, Congress mandated that only cases "in which a notice of disagreement [has been] filed under section [7105] . . . of title 38, United States Code, on or after [November 18, 1988]" would be heard by this Court. Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); 38 U.S.C. § 7251 note; *see also Burton v. Derwinski*, 933 F.2d 988, 989 (Fed.Cir.1991) ("a notice of disagreement has a specific meaning in the context of these cases: it is a document that initiates an appeal from an agency of original jurisdiction."). This Court, sitting en banc, has held that "[t]here can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." *Hamilton v. Brown*, 4 Vet.App. 528, 538 (1993) (en banc), *aff'd*, 39 F.3d 1574 (Fed.Cir. 1994). Thus, the jurisdiction-conferring NOD referred to in VJRA § 402 is a written communication that initiates appellate review of an initial determination by the agency of original jurisdiction. *Hamilton*, 39 F.3d at 1582, *aff'g* 4 Vet.App. at 535–37.

■ Here, the appellant filed an NOD in September 1990 respecting an RO decision refusing to reopen his claim. Propelled by that NOD, the BVA issued a decision in August 1991. In response to the August 1991 decision, the appellant filed a motion for reconsideration of that, and only that, Board decision. The Secretary argues that the BVA's sua sponte initiative in reaching back to an earlier BVA decision which had been issued pursuant to an earlier NOD, vitiates the appellant's September 1990 NOD. This argument must fail.

■ At the time the appellant filed his September 1990 NOD it was a valid NOD, under VJRA § 402, for purposes of conveying jurisdiction on this Court over the issue whether he is entitled to service connection for a seizure disorder. *See Hamilton, supra; Bernard v. Brown*, 4 Vet.App. 384, 390 (1993) (NOD as to RO refusal to reopen service-connection claim gives Board jurisdiction to decide merits of that claim). Such timely filing of a post-VJRA NOD had judicial-review-conferring potential not possessed by the earlier, pre-VJRA NOD and gave the appellant a right to a future Court decision on that claim once a final, adverse Board decision was issued and a timely Notice of Appeal (NOA) under 38 U.S.C. § 7266(a) was filed. *But see Frazer v. Brown*, 6 Vet.App. 19, 23 (1993). The Secretary would have the Court pretend that the September 1990 NOD never existed and that the judicial-review rights associated with a timely post-VJRA NOD could be eradicated by the BVA Chairman. When confronted by a similar argument by the Secretary as to an NOA timely filed in this Court, we held that the BVA Chairman could not deprive this Court of jurisdiction to review a BVA decision by granting reconsideration of that decision after the NOA had been filed here. *Cerullo v. Derwinski*, 1 Vet.App. 195, 196 (1991). The Secretary's position in the instant case is contrary to the basic approach of *Cerullo* and to the concept of appellate rights and the statutory and regulatory protection afforded those rights. *See* 38 U.S.C. § 5104(a) (requiring Secretary to include with notice of results of VA (including BVA) adjudication decisions "an explanation of the procedure for obtaining review of the decision"); 38 C.F.R. § 3.103(b)(1) (1994) (claimants and their representatives are entitled to notice of "the right, as well as the necessary procedures and time limits, to initiate an appeal of the decision"); 38 C.F.R. § 20.204(c) (1995) (only a claimant or his or her representative may withdraw NOD). To conclude that the granting of a motion for reconsideration by the Chairman, pursuant to section 7103, could divest the post-VJRA NOD of its jurisdiction-conferring ability as to judicial review would contravene the plain language and the purpose of the VJRA. An appellant cannot be deprived of his or her right to appeal to this Court as a result of the Chairman's

action to reconsider a prior decision, or as a result of action by the BVA to correct an obvious error in the record, under 38 U.S.C. § 7103.

Accordingly, the Court concludes that a potential right to judicial review in this case was initiated by the September 1990 post-VJRA NOD as to the appellant's service-connection claim and was perfected (but not satisfied) once the Board issued its adverse July 1992 decision (which replaced the adverse August 1991 BVA decision) and the appellant filed a timely NOA therefrom. That NOD's judicial-review viability could be extinguished by the claimant's withdrawal of the NOD, by a VA award of all benefits sought, by a final, unappealed BVA decision, or by a final Court decision. Here, the BVA-appeal and potential judicial-review rights conferred by the September 1990, post-VJRA NOD were not satisfied by the August 1991 BVA decision because that decision's finality was abated by the appellant's motion for reconsideration filed within 120 days after that decision and the timely appeal of the July 1992 BVA reconsideration decision to this Court. *See Rosler v. Derwinski,* 1 Vet. App. 241, 249 (1991) (finality of BVA decision abated by motion for reconsideration if claimant files motion with BVA during 38 U.S.C. § 7266(a) 120–day judicial appeal period for filing NOA, and BVA decision is not appealable until its finality is restored or a reconsidered BVA decision is issued).

The appellant's judicial-review rights were not affected by the March 1988 pre-VJRA NOD, which precipitated the final, unappealed (indeed unappealable) BVA decision of June 1990, because the appellate rights afforded by that NOD were then only as to administrative review by a final BVA decision and were satisfied by that decision before the September 1990 NOD was filed. Hence, when that post-VJRA NOD was filed, it was the only viable NOD as to this claim. The Chairman's decision to reconsider the June 1990 BVA decision resuscitated the pre-VJRA NOD entitling the appellant to a (new) final BVA decision in satisfaction of that NOD and such satisfaction was provided by the July 1992 BVA reconsideration decision. However, the potential judicial-review rights that had been conferred *previous* to the Chairman's order by the September 1990 NOD, and were later perfected by the July 1992 adverse BVA decision and the timely NOA therefrom, could be satisfied and therefore extinguished *only* by the final decision being rendered by this Court today.

Moreover, to accept the Secretary's interpretation of VJRA § 402 and section 7103 would cause this Court's jurisdiction to turn on the decisions of the Chairman and the BVA. *Cf. C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 877–78 (Fed.Cir.1983) (Federal Circuit holds that, as arbiter of its own jurisdiction, it must have the power to decide whether lower court has jurisdiction and to decide that question independent of conclusion reached by that lower court). The result of such an outcome would allow our jurisdiction to " 'float in the air' to be seized by [the lower] tribunal at any time." *Cerullo,* 1 Vet. App. at 197 (quoting *Cochran v. Birkel,* 651 F.2d 1219, 1222 (6th Cir.1981) (quoting *Ruby v. Secretary of the Navy,* 365 F.2d 385, 388–89 (9th Cir.1966) (en banc), *cert. denied,* 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967))). The BVA Chairman could otherwise defeat the right to judicial review at a critical juncture in a case by ordering reconsideration of a prior decision which is beyond the reach of that right.

It is important to note that the Federal Circuit has stated, in an analysis of this Court's jurisdiction, that Congress set the cutoff date of November 18, 1988, to allow the Court of Veterans Appeals to begin functioning with a manageable number of cases, and to "protect the new court from a flood of stale Board appeals." *Prenzler,* 928 F.2d at 394 (citing 134 CONG.REC. S16,650 (daily ed. Oct. 18., 1988) (statement of Sen. Cranston)). To allow that date to be used by the BVA Chairman as a shield against judicial review would be to give that date meaning beyond that intended in enacting judicial review. Indeed, to do so would exclude from judicial review any case where reopening of a claim is sought and a prior final Board decision is reconsidered, and the claim rejected under a pre-November 18, 1988, NOD. To the extent that *Frazer, supra,* suggests otherwise, it is overruled. Therefore, the Court holds that

the appellant's potential right to judicial review of his claim conferred by his post-VJRA NOD and thereafter perfected was not extinguished in this case even though a BVA decision which was based on a pre-VJRA NOD was subsequently vacated and replaced by a BVA reconsideration decision.

### B. Merits of the Appellant's Claim

■■ We turn now to the merits of the BVA's decision. Pursuant to 38 U.S.C. § 7104(d)(1), a final decision of the Board must include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." This Court has held "that the BVA [must] articulate with reasonable clarity its 'reasons or bases' for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting material evidence submitted by or on behalf of the appellant. *Gabrielson v. Brown,* 7 Vet.App. 36, 39 (1994) (quoting *Gilbert v. Derwinski,* 1 Vet. App. 49, 57 (1990)). Where the Board fails to fulfill this duty, the Court is prevented from effectively reviewing the adjudication. *Meeks v. Brown,* 5 Vet.App. 284, 288 (1993); *Browder v. Brown,* 5 Vet.App. 268, 272 (1993). For the reasons set forth below, the Court holds that the BVA did not provide an adequate statement of reasons or bases for denying the veteran's claim based on all the evidence presented.

The appellant correctly argues that the BVA did not indicate why the appellant could not be within the 5% window of individuals that may have seizure occurrence 20 or more years after injury, as stated by the neurologist, Dr. Calhoun, who provided the independent medical opinion. Rather, the BVA erred by substituting its own medical opinion for that of Dr. Calhoun. While the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence and, more importantly, must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. *See*

*Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169 (1991) *(Hatlestad I); Gilbert,* 1 Vet. App. at 57; *Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990).

In supporting its denial of service connection for a seizure disorder as a residual of the in-service gunshot wound, the Board did not address all of Dr. Calhoun's statement. Specifically, Dr. Calhoun indicated that it was likely that the appellant was in a 5% range of possibility that a seizure disorder may be "independently" attributable to closed head injury and that the in-service "facial injury caused an additional concussion making the likelihood that the underlying cause of the seizure disorder may be a combination" of the in-service wound and the cerebral concussions in service. R. at 255. The Board simply dismissed, without a discussion and application of 38 U.S.C. § 1154(b), *see Caluza v. Brown,* 7 Vet.App. 498, 507 (1995), the appellant's testimony that he had loss of consciousness after his injury, and stated that Dr. Calhoun had "mis-read" the service medical records. R. at 11–12. In addition, the Board simply ignored the expert articles that the appellant submitted which relate seizures to closed head trauma in war veterans 5% of the time. R. at 197–201.

■ In support of the denial, the Board cited and quoted medical textbooks for the propositions (1) that attributing seizure disorder to an injury occurring more than twenty years before is not scientifically accepted; (2) that "chronic" seizures resulting from trauma begin within six to twelve months after the injury; (3) that epilepsy is rare when no loss of consciousness occurred; and (4) that seizures after the age of fifty were most likely caused by cerebrovascular disease. R. at 11–12. Epilepsy means "any of various disorders marked by disturbed electrical rhythms of the central nervous system and typically manifested by convulsive attacks usually with clouding of consciousness." WEBSTER'S at 216. This Court held in *Thurber v. Brown,* 5 Vet.App. 119 (1993), that when the BVA, in rendering a decision, relies on a medical treatise obtained after the issuance of the most recent SOC or Supplemental SOC with respect to the claim at issue,

the BVA is required to provide the appellant with reasonable notice of the medical treatise and of the reliance proposed to be placed on the treatise, as well as a reasonable opportunity for the appellant to respond to the medical treatise. *Id.* at 126; *Austin v. Brown,* 6 Vet.App. 547, 551 (1994) (BVA decision which relies upon medical opinion must allow the appellant an opportunity to submit additional evidence in response); *Houston v. Brown,* 5 Vet.App. 245, 247 (1993) (BVA must provide appellant with reasonable notice of any evidence, medical texts or treatises to be relied upon in rendering decision and reasonable opportunity to respond); *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992) (quotations, rather than citations, from medical treatises should be used). The BVA did not comply with any of these requirements.

■ Moreover, the BVA decision failed to discuss the applicability of the benefit of the doubt doctrine as set forth in 38 U.S.C. § 5107(b). In *Gilbert,* this Court stated that "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." *Gilbert,* 1 Vet.App. at 54. Citing *Gilbert,* the Board stated that the proper standard to use was the "preponderance of the evidence standard" and then concluded that "the evidence preponderates against the veteran's claim." R. at 12. However, in *Gilbert* the Court specifically stated that entitlement need not be established beyond a reasonable doubt, by clear and convincing evidence, or by a fair preponderance of the evidence. *Id.* at 54. Under the benefit of the doubt doctrine established by Congress, when the evidence is in "relative equipoise, the law dictates that the veteran prevails." *Id.*

■ The appellant is a combat veteran who was awarded the Purple Heart five times. The appellant's service medical records dated December 1944 and current medical records note that the appellant had a concussion during combat which does not appear to be recognized by the BVA. R. at 43, 62, 255. With respect to injuries or disabilities incurred in or aggravated during combat, even in the absence of official records to corroborate that a claimed injury or disease was incurred in or aggravated during

such combat, the Secretary is required to accept as sufficient proof of service connection satisfactory lay or other evidence, provided, however, that the evidence is consistent with the circumstances, conditions, or hardships of such service. 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d) (1994); *Caluza, supra; West v. Brown,* 7 Vet.App. 70, 75 (1994); *Zarycki v. Brown,* 6 Vet.App. 91, 97 (1993); R. at 122–23 (appellant's testimony as to loss of consciousness). Service connection may be rebutted by clear and convincing evidence to the contrary. 38 U.S.C. § 1154(b); *West and Zarycki, both supra.* In determining whether to apply the benefit of the doubt doctrine under 38 U.S.C. § 5107(a) and 1154(b), the Board should consider the above discussion.

### III. Conclusion

For the reasons stated above, the July 23, 1992, decision of the BVA is VACATED and the matter is REMANDED. The Court has stated that a remand is not merely for the purpose of rewriting the decision so that it would facilely comply with 38 U.S.C. § 7104(d)(1). *Fletcher v. Derwinski,* 1 Vet. App. 394, 397 (1991); *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher,* 1 Vet.App. at 397.

KRAMER, Judge, concurring:

I concur in part II.A.; however, I cannot agree with part II.B. to the extent that the majority predicates its remand on a five percent probability that the appellant's present neurological disorder is related to service. Evidence to this degree means that there is a 95% probability that there is no relationship between the appellant's present disability and service. Simply put, there is no legal basis upon which a five percent possibility can constitute the predicate evidentiary base that would permit an appellant to prevail. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 54 (1991) ("[A] veteran need only demonstrate

that there is an 'approximate balance of positive and negative evidence.' ... In other words, ... the preponderance of the evidence must be against the claim for benefits to be denied.... [Thus,] when a veteran seeks benefits and the evidence is in relative equipoise, the law dictates that [the] veteran prevails."); *see also* 38 U.S.C. § 5107(b). As the claim must fail on this basis, any failure by the BVA to deal adequately with it constitutes harmless error. *See* 38 U.S.C. § 7261(b); *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992); *Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991).

On the other hand, I would remand based on another part of Dr. Calhoun's statement quoted by the majority. In sum, Dr. Calhoun indicated that the appellant's gunshot wound and the accompanying concussion with loss of consciousness made it likely that the appellant's present condition was caused by these events. R. at 255. The BVA dismissed Dr. Calhoun's statement partly on the basis that there was no loss of consciousness because service medical records (SMRs) did not so indicate. While the SMRs are silent as to loss of consciousness, the appellant clearly testified that during the event in which he was wounded he did lose consciousness ("And at that time, I came to[ ] with dirt and everything on top of me....") R. at 122–23. As the majority also correctly recognizes, under 38 U.S.C. § 1154(b), the appellant's testimony as to his loss of consciousness during combat, even in the absence of official records, must be accepted by the Secretary as long as such loss of consciousness was consistent with the circumstances, conditions, or hardships of such combat. *See Caluza v. Brown,* 7 Vet.App. 498, 507 (1995). Thus, the BVA has failed to address Dr. Calhoun's statement adequately and I would remand on this basis.