Edward HARRIS, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 96–926.

United States Court of Veterans Appeals.

Sept. 22, 1998.

Kenneth M. Carpenter, Topeka, KS, was on the brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and John D. McNamee, Washington, DC, were on the brief for appellee.

Peter Link, Lakewood, CO, was on the brief for Blinded Veterans Association as amicus curiae.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Judges.

FARLEY, Judge:

This is an appeal from an April 17, 1996, Board of Veterans' Appeals (Board or BVA) decision which denied the veteran's claim for service connection for retinitis pigmentosa.

Record (R.) at 10–11. Both parties filed briefs, and the Blinded Veterans Association filed an amicus curiae brief in support of the appellant. The Secretary filed a motion to strike the amicus brief; that motion is denied. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will affirm the Board's decision.

## I. FACTS

The veteran served on active duty in the U.S. Army from August 1949 to November 1952. *See* R. at 10. A March 1959 decision of the BVA (R. at 110–11) denied the veteran's claim for service connection for retinitis pigmentosa, and July 1978 (R. at 179–83) and March 1988 (R. at 291–95) BVA decisions denied his requests to reopen that claim. On July 5, 1989, the veteran filed a statement in support of claim requesting that his "file be reviewed" for service connection for retinitis pigmentosa. R. at 299. Also on that date, the veteran's service representative filed a document titled "Notice of Disagreement" (NOD) arguing, inter alia, that the veteran's claim had been inappropriately denied, that he was entitled to the presumption of soundness at entry into service and the presumption of aggravation in service, and that there was no evidence that retinitis pigmentosa is a congenital condition. R. at 302. An attached statement by the veteran's representative repeated those assertions and concluded: "[W]e believe the denial of the veteran's original claim for service connection was clearly in error." R. at 303–04. There is no RO decision in the record on appeal (ROA) as to which that filing could constitute a timely NOD. *See* 38 U.S.C. § 7105(b)(1).

In August 1989, the RO issued a Statement of the Case (SOC), which identified the issue as "Reconsideration of entitlement to service connection for retinitis pigmentosa" and referred to a July 25, 1989, RO decision—not present in the ROA—that continued the prior denial of service connection for retinitis pigmentosa. R. at 306–08. In September 1989, the veteran filed a VA Form 1–9, Appeal to the Board of Veterans' Appeals (Form 1–9), that sought "reconsideration" of the service connection issue, listing the date of the decision being appealed as "7–5–89." R. at 311. An October 10, 1989, statement of his service representative similarly sought "reconsideration" of the claim. R. at 313. A July 1991 BVA decision determined that the RO had not appropriately applied a reopening analysis under 38 U.S.C. § 5108 and *Manio v. Derwinski,* 1 Vet.App. 140 (1991), and remanded the claim for a determination of whether the veteran had presented new and material evidence to reopen the prior disallowance of his claim for service connection for retinitis pigmentosa. R. at 332–35. On remand, an October 1991 RO decision concluded that there was no new and material evidence. R. at 337–38. In a February 1992 statement, the appellant's representative argued: "It would appear [that] the R.O. is trying to avoid this s/c [service connection] issue by hiding behind the issue of materiality of evidence." R. at 346.

On September 24, 1992, the BVA Deputy Vice Chairman ordered reconsideration of the 1959, 1978, and 1988 BVA decisions. R. at 363. That order notes: "Information currently available to the Board does not show that a Notice of Appeal was filed with the United States Court of Veterans Appeals in this case prior to the date that *your motion for reconsideration was filed with the Board." Id.* (emphasis added). The order does not, however, otherwise identify a specific motion for BVA reconsideration, and it is not clear what "motion" that order relies upon or whether it is to be interpreted as a sua sponte order of reconsideration. The ROA contains no record of any such reconsideration motion ever having been filed with the Board by the appellant.

In May 1993, an expanded Board section issued a reconsidered decision that again remanded the case to the RO for the consideration of additional evidence submitted by the veteran in response to the order for reconsideration and then a return to the Board if the benefit sought remained denied. R. at 371–73. On remand, the RO found no new and material evidence. R. at 380–81. In October 1994, an expanded section of the Board again remanded the case to the RO for de novo review of the entire record because the RO

had incorrectly applied a new-and-material-evidence analysis. R. at 392–94. On remand, the RO denied service connection (R. at 397–99), and the claim was returned to the Board (*See* R. at 401).

In July 1995, the BVA requested a medical expert opinion from the Harry S. Truman VA Medical Center (VAMC). R. at 415–17. Dr. Frank Rieger, the Chief of Ophthalmology Service at the VAMC, submitted his opinion on August 8, 1995. R. at 419–20. Dr. Rieger opined that the veteran did have retinitis pigmentosa prior to August 1949 when he was inducted into military service and that the decreased visual acuity he experienced during service was consistent with the natural progression of the disease. *Id.* In the April 17, 1996, BVA decision here on appeal, the Board denied service connection for retinitis pigmentosa. The Board concluded that, although retinitis pigmentosa was not recorded on the service entrance examination, "the evidence clearly and unmistakably demonstrates that retinitis pigmentosa preexisted the veteran's entry into active service" and that "any increase in retinitis pigmentosa during active service was due to the natural progress of that condition." R. at 11. That decision notes: "The final decision by the Reconsideration Section will replace the March 1959 decision of the Board." R. at 10.

## II. ANALYSIS

The appellant argues that the Board erred in concluding that his retinitis pigmentosa preexisted service or, in the alternative, that even if that condition preexisted service the evidence of record demonstrates that his retinitis pigmentosa was aggravated in service. Amicus curiae argues that the Board, because its decision was made as a result of an order granting reconsideration of a prior BVA decision, erred in relying upon evidence obtained after the 1959 Board decision. Before reaching the merits, the Court must first satisfy itself that it possesses jurisdiction over the April 1996 BVA decision which resulted from an order granting reconsideration of a 1959 BVA decision. *See Barnett v. Brown,* 83 F.3d 1380, 1383 (Fed.Cir.1996) ("any statutory tribunal must ensure that it

has jurisdiction over each case *before* adjudicating the merits").

### A. Jurisdiction

This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Skinner v. Derwinski,* 1 Vet.App. 2, 3 (1990). In general, the Court has jurisdiction to review only those final BVA decisions prior to which an NOD was filed on or after November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction (AOJ). *See* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]. Therefore, provided there is a jurisdiction-conferring NOD, the Court has jurisdiction to review BVA reconsidered decisions as well as original BVA decisions. *See, e.g., Brienza v. Derwinski,* 2 Vet.App. 584, 585–86 (1992) (per curiam order); *Rosler v. Derwinski,* 1 Vet.App. 241, 249 (1991); *see also Mayer v. Brown,* 37 F.3d 618, 619–20 (Fed.Cir.1994) (Court has jurisdiction over a denial of a motion for BVA reconsideration only if it has jurisdiction over the underlying BVA decision).

In *Smith v. Brown,* this Court stated:

Here, the appellant filed an NOD in September 1990 respecting an RO decision refusing to reopen his claim. Propelled by that NOD, the BVA issued a decision in August 1991. In response to the August 1991 decision, the appellant filed a motion for reconsideration of that, and only that, Board decision. The Secretary argues that the BVA's sua sponte initiative in reaching back to an earlier BVA decision which had been issued pursuant to an earlier NOD, vitiates the appellant's September 1990 NOD. This argument must fail.

At the time the appellant filed his September 1990 NOD it was a valid NOD, under VJRA § 402, *for purposes of conveying jurisdiction on this Court over the issue whether he is entitled to service connection for a seizure disorder. See Hamilton* [*v. Brown,* 4 Vet.App. 528 (1993), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994) ]; *Bernard v. Brown,* 4 Vet.App. 384, 390 (1993)

(NOD as to RO refusal to reopen service-connection claim gives Board jurisdiction to decide *merits of that claim*). Such timely filing of a post-VJRA NOD had judicial-review-conferring potential not possessed by the earlier, pre-VJRA NOD and gave the appellant a right to a future Court decision on that claim once a final, adverse Board decision was issued and a timely Notice of Appeal (NOA) under 38 U.S.C. § 7266(a) was filed. *But see Frazer v. Brown,* 6 Vet.App. 19, 23 (1993). 8 Vet.App. 546, 551 (1996) (en banc)(emphasis added).

■ Here, the veteran sought reopening of his claim in 1989. R. at 299, 302. When reopening was denied (*see* R. at 307), he filed a Form 1–9 (R. at 311) which satisfied the requirements for a timely NOD (*see Malgapo v. Derwinski,* 1 Vet.App. 397, 398–99 (1991) (Form 1–9 can be considered an NOD)) with that decision and perfected his appeal to the BVA. This NOD, in turn, prompted (i) the BVA to remand; (ii) the RO to issue a confirmed decision; (iii) the BVA *sua sponte* to order reconsideration of its 1959, 1978, and 1988 decisions; and (iv) the Board to issue the April 17, 1996, decision now before this Court. The NOD led directly to the Board decision on appeal. Since there is a timely NOD and Notice of Appeal (NOA), this Court has jurisdiction over the April 1996 BVA decision denying the veteran's claim for service connection. *See Smith, supra.*

■ The Court finds no impediment to the exercise of jurisdiction in the fact that the Board has never specifically adjudicated whether there is new and material evidence to reopen the veteran's previously and finally disallowed claim, choosing instead to order reconsideration and adjudicate the case de novo on the basis of all the evidence of record. *Cf. Butler v. Brown,* 9 Vet.App. 167, 171 (1996) (noting that in *Barnett, supra,* U.S. Court of Appeals for the Federal Circuit held that determination of whether or not there is new and material evidence to reopen is "a mandatory jurisdictional requirement"); *see also Routen v. West,* 142 F.3d 1434 (Fed. Cir.1998). In the instant case, the BVA Deputy Vice Chairman's order of BVA reconsideration negated the three prior Board decisions. *See Dudnick v. Brown,* 9 Vet.App. 397, 397–98 (1996) (per curiam order) (filing of motion for BVA reconsideration abates finality of Board decision); *Rosler, supra.* Therefore, there was no prior final decision as to which new and material evidence would be required under section 5108, and the BVA did not need to address first the question of new and material evidence; rather, the Board properly reached a decision on the merits. *See Smallwood v. Brown,* 10 Vet. App. 93, 97 (1997) ("Court shall construe the 'reconsideration' decision as the decision that the Board was required to issue [initially].").

### B. Nature of the Board's Review

■ Amicus curiae contends that the Board's April 1996 decision improperly relied upon evidence accumulated after the Board decision(s) (1959, 1978, and 1988) purportedly being reconsidered. *See* Brief of Amicus Curiae at 1. However, in *Boyer v. Derwinski,* 1 Vet.App. 531, 532 (1991), the Court stated:

We hold that, as of January 1, 1989, the BVA was required by law to proceed in a case under reconsideration as though the initial panel decision had never been entered and, instead, to conduct a *de novo* review "based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation."

Our decision in Boyer makes clear that the Board is not only permitted, but *required* to view all of the evidence of record (even that obtained after the BVA decision under reconsideration) when the BVA conducts its de novo review of the claim after reconsideration has been granted. Accordingly, we cannot accept the argument presented by amicus curiae.

### C. Merits of the Appeal

■ Service connection for VA disability compensation purposes will be awarded to a veteran who served on active duty during a period of war, or during a post–1946 peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases that were initially manifested, generally to a degree of 10% or more, within a specified pre-

sumption period after separation from service. *See* 38 U.S.C. §§ 1110, 1112(a), 1116, 1131, 1133(a), 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307 (1997). When a disease is first diagnosed after service but not within an applicable presumption period, service connection may nevertheless be established by evidence demonstrating that the disease was in fact incurred during the veteran's service. *See, e.g., Cosman v. Principi*, 3 Vet.App. 503, 505 (1992) ("even though a veteran may not have had a particular condition diagnosed in service, or for many years afterwards, service connection can still be established"); *see also* 38 C.F.R. § 3.303(d) (1997). A service connection claim must be accompanied by evidence that establishes that the claimant currently has the claimed disability. *See Brammer v. Derwinski*, 3 Vet.App. 223 (1992); *Rabideau v. Derwinski*, 2 Vet.App. 141, 144 (1992). A determination as to service connection is a question of fact that the Court reviews under a "clearly erroneous" standard of review. *See Hayes v. Brown*, 9 Vet.App. 67, 72 (1996); 38 U.S.C. § 7261(a)(4). "[I]f there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

 Under 38 U.S.C. § 1111 and 38 C.F.R. § 3.304(b) (1997), a veteran "is entitled to service connection for a disease present in service unless the disease was noted in an examination report at the time of entrance into service or clear and unmistakable evidence shows that the veteran's disease preexisted service and was not aggravated thereby." *Lichtenfels v. Derwinski*, 1 Vet. App. 484, 486 (1991). Moreover,

> the burden of proof is on the government to rebut the presumption of sound condition upon induction by showing that the disorder existed prior to service and, if the government meets this requirement, by showing that the condition was not aggravated by service.... Whether or not there is such evidence is a legal determination [that] the Court reviews de novo.

*Kinnaman v. Principi*, 4 Vet.App. 20, 27 (1993); 38 U.S.C. § 1153; 38 C.F.R. § 3.306 (1997).

 The appellant argues that the presumption of soundness attached because his August 1949 entrance examination, although noting defective vision, did not note retinitis pigmentosa. *See* R. at 23–24. The veteran was diagnosed with retinitis pigmentosa in 1951, at which time it was reported that he had an eight-year history of poor night vision that had worsened in the last year. R. at 51–52, 54, 59–69. (In a November 1994 statement, the veteran argued that he had been misunderstood in service and that he had stated that he had suffered from poor night vision for "a" year not "eight" years. R. at 409.) His discharge examination noted poor vision and recorded a slight deterioration in visual acuity from the entrance examination in his left eye. R. at 71. His eyes continued to deteriorate after service. R. at 91, 119, 150. Various reports since service noted symptoms of night blindness since childhood. R. at 119, 132, 137, 187, 328. Also of record are lay statements attempting to connect the veteran's use of a microscope in service to an aggravation of his eye condition (R. at 144, 146, 168, 191, 264) and medical statements that noted, inter alia, "some reasonable evidence that excessive light has some effect on the retina in [retinitis pigmentosa] cases" (R. at 162); that "[u]se of the microscope would not under ordinary conditions be thought of as constant illumination" (R. at 148); and that "ordinary daylight may have a deleterious effect on the vision of patients with retinitis pigmentosa" (R. at 185; *see also* R. at 198). *See also* R. at 240–52. In December 1978, Dr. Heckenlively stated that the veteran "was most likely losing visual field over the period 1949–52, as this would be the normal course that a person with his disease would have in this stage of their disease." R. at 187. He was "unable to state whether viewing samples through a light microscope for extended periods would contribute to any progression of his problem though this is theoretically possible." *Id.* Also of record is Dr. Rieger's August 1995 VA medical opinion which concluded that the veteran's retinitis pigmentosa preexisted service and that, although it worsened during service, such worsening was "commiserate [sic] with the natu-

**462**

ral progression" of the condition. R. at 419–20.

Upon de novo review, the Court concludes that there was clear and unmistakable evidence to rebut the presumptions of soundness and aggravation. Although retinitis pigmentosa was not noted on the veteran's entrance examination and his vision defect did worsen in service, Dr. Rieger's unequivocal and uncontradicted opinion is itself clear evidence to the contrary and is supported by the repeated assertions that the veteran had suffered from night blindness since childhood. *See Crowe v. Brown,* 7 Vet.App. 238, 246 (1994) (record lacking a medical opinion specifically addressing the relevant question was insufficient to determine whether there was clear and unmistakable evidence); *Kinnaman,* 4 Vet.App. at 27 (physician's statement as to probability that condition preexisted service was not clear and unmistakable evidence).

### III. CONCLUSION

Upon consideration of the ROA and the briefs of the parties and amicus curiae, the Court finds that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *Gilbert, supra; see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). The Court also is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert, supra.* Accordingly, the April 17, 1996, decision of the Board of Veterans' Appeals is AFFIRMED.